HILLSDALE COAL & COKE CO. v. PENNSYLVANIA R. CO.

(District Court, E. D. Pennsylvania. November 9, 1916.)

No. 2446.

1. CARRIERS ☞36—INTERSTATE COMMERCE ACT—ACTIONS BY SHIPPER FOR DAMAGES.

Any person claiming to have been damaged by a discriminating or otherwise illegal act of an interstate railroad company is given a right of action for damages by Interstate Commerce Act Feb. 4, 1887, c. 104, § 9, 24 Stat. 382 (Comp. St. 1913, § 8573), and his failure to first apply to the Interstate Commerce Commission is not jurisdictional, but affects only the matter of proof. If the act complained of is in accordance with a duly established and filed system or rule, he can only prove its unjust or discriminatory character by procuring a finding of such fact by the Commission, which has exclusive power to make such finding, and he may at the same time ask for an award for damages as provided in section 16 of the act, as amended by Hepburn Act June 29, 1906, c. 3591, § 5, 34 Stat. 590 (Comp. St. 1913, § 8584); but, if the act complained of is a departure from such established rules, he may prove such fact without resort to the Commission.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 95; Dec. Dig. ☞36.]

2. CARRIERS ☞36—INTERSTATE COMMERCE ACT—ACTIONS BY SHIPPER FOR DAMAGES.

Such an action, brought after an award by the Commission, is not one to enforce such award, but is in the nature of an appeal, taking into court only the original complaint or cause of action presented to the Commission, and triable de novo like any other civil suit for damages, except that, as provided by section 16 of the act, as amended by Hepburn Act

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

June 29, 1906, c. 3591, § 5 (2), 34 Stat. 590 (Comp. St. 1913, § 8584), the findings and order of the Commission are admissible, and are conclusive upon the administrative facts found, and prima facie evidence of the other facts therein stated.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 95; Dec. Dig. ☞36.]

At Law. Action by the Hillsdale Coal & Coke Company against the Pennsylvania Railroad Company. Sur rule for new trial. Rule discharged.

A. L. Cole and A. M. Liveright, both of Clearfield, Pa., for plaintiff.

Henry Wolf Biklé and Francis I. Gowen, both of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. This case is ruled by the principles of law discussed in Minds v. P. R. R. Co., 237 Fed. 267, in its larger aspect. The minor questions as set forth in the reasons for a new trial will, because of their number, be grouped into classes and disposed of in the order in which discussed by counsel.

[1] We are in entire accord with that part of the argument of counsel for defendant wherein the essential elements of a case at law are discussed. The point is often made as if it were one of jurisdiction. It is not that, but one of the presence or absence of the elements necessary to make out a case. A plaintiff, who brings his action at law for a cause of action arising under the provisions of the Interstate Commerce Law, must (as every plaintiff must) make out his case. If he has been damaged by a car distribution made in accordance with a system or rule of distribution adopted by a railroad carrier and filed with the Commission in accordance with the requirements of the statutes, he has not suffered a legal injury, unless the distribution be one of the character condemned by law. This he must prove, and he can prove it only by a finding of the Commission. In consequence he is driven to go first to the Commission for all the administrative findings. The reason for this lies on the surface of things. When, however, these have been found, either on complaint of our supposititious plaintiff or of some one before him, then he may bring his action at law and can recover. He can recover, because he can make out his case first by proving (through the finding of the Commission) that the system of car distribution enforced by the carrier defendant was unjust and discriminatory; and, secondly, that he has been damaged thereby, and to what amount. He is only compelled to go to the Commission when his case depends upon the administrative finding that the rule of car distribution of which he complains is an improper one. If the carrier has adopted and filed a fair and proper rule, or one has been found by the Commission, and the cause of action arises out of an unjust and discriminatory departure from it, causing damage, this fact may be established in an action at law, and no preliminary recourse to the Commission is necessary. The adjudged cases make clear the distinction by which it may be readily determined whether such recourse is necessary.

[2] The distinction indicated is not only consistent with, but is to be found in, the section of the act and the cases to which we have

237 F.—18

been referred: Section 9, Act to Regulate Commerce; P. R. R. v. Clark, 238 U. S. 456, 35 Sup. Ct. 896, 59 L. Ed. 1406; Proctor v. U. S., 225 U. S. 282, 32 Sup. Ct. 761, 56 L. Ed. 1091; Riddle v. Railroad, 3 Interst. Com. R. 230; P. R. R. v. International, 230 U. S. 184, 33 Sup. Ct. 893, 57 L. Ed. 1446, Ann. Cas. 1915A, 315; P. R. R. v. Puritan, 237 U. S. 121, 35 Sup. Ct. 484, 59 L. Ed. 867; Railroad v. Penn, 137 Fed. 343, 70 C. C. A. 23. To which may be added Barrett v. Gimbel Bros., 226 Fed. at page 631, 141 C. C. A. 379, the approved ruling being reported in (D. C.) 215 Fed. 1004, reference to which latter ruling is made merely as an expression of the views of this court already made. This further distinction is, of course, also clear, emphasizing the distinction already made. The complaining party is given an option or choice of the tribunal he will ask to assess his damages. When he has once made his election, he is (again of course) bound by it. He cannot follow an unsuccessful resort to one tribunal by taking the same claim of damages before another. What he can do, and what he must do, are sometimes coupled, and sometimes not. Both of them may be thus summarized:

1. If the question he asks to have determined is an administrative one, he has no option, but must make his complaint to the Commission, and cannot take it elsewhere.

2. If the questions are all and wholly juridical, he has the option (under the rulings of the courts, although the Commission has suggested a different view) of either bringing his action at law or complaining to the Commission.

3. If the questions necessarily arising are some of them administrative and some juridical, then he must first go to the Commission to have the administrative questions determined, but as to the juridical questions he still retains his alternative or optional right.

4. He may first apply to the Commission to have the administrative questions determined, limiting his complaint to this feature, and, if determined in his favor, may bring his action at law, establishing what may be called the administrative facts by putting in evidence the finding of the Commission and proving the juridical facts by any evidence at his command; or—

5. He may include in his complaint to the Commission both the administrative and the juridical elements of his case, and have them determine both and everything involved in his complaint.

If there had been no right of trial by jury involved, the supply of remedies provided by the act would doubtless have been stopped at this point. Because it was involved, Congress saw that something further was required. As the right of trial by jury was not involved in the administrative questions, the findings of the Commission as to them were made to conclude everybody. As the plaintiff would not bring the juridical questions before the Commission, except as a volunteer, the findings of the Commission were made to conclude him. As the defendant was not a volunteer, and as Congress wished to give to the carriers (whether it was a constitutional right or not) the right to a jury trial, the findings of the Commission were not made to conclude them. The carrier was therefore left at liberty to pay or not pay the award as it might elect. If it paid it, the complaint of the plain-

tiff was satisfied, and of course silenced. If it did not pay it, the plaintiff must have a further remedy, and this rei necessitate must be by a proceeding at law, because in no other way could the carrier be brought before a jury. He is therefore given (or there is restored to him) a right of action at law. To make use (as far as could be done) of the fruits of the labor and time expended in securing the report of the Commission, the findings are made evidence, and the plaintiff is allowed his costs and counsel fees. If, to paraphrase the language of Congress, this action, to which the act of the defendant has driven the plaintiff, is treated in all respects as an action for damages, except that all the findings of the Commission are made evidence, etc., all or nearly all troubling questions are eliminated. If the action is regarded as one to enforce the findings of the Commission, and they are further regarded as binding upon the plaintiff, but open to any attack by the defendant, then a veritable legal chaos reigns.

It will be seen to follow that in such final action the administrative findings must (as in the case of a first action at law) conclude everybody and settle the administrative facts. The facts to be found by the jury must be open ones to the defendant, and (at least may) be alike open to the plaintiff. The simplest view which might be taken of such a proceeding is that it is to be tried (with the exceptional features noted) precisely as the action for damages would have been tried, had the plaintiff gone first to the Commission to determine the administrative facts, and then brought his action; the administrative findings included in the report being treated as such preliminary findings. This would, however, open to the plaintiff the opportunity to go beyond the cause of action presented to the Commission, and would be inconsistent with some of the provisions of the act of Congress. All such inconsistencies disappear, however, if the proceedings are treated as in the nature of appeal proceedings, taking into court only the original complaint or cause of action presented to the Commission, but otherwise de novo, except for the evidentiary and other features ingrafted upon it by Congress, and with the administrative features conclusively established by the findings of the Commission, and the juridical facts open to be established by any otherwise proper evidence, and to be found under all the evidence, in the body of which is embraced the findings of fact by the Commission.

This question, so far as concerns the action of this court, is determined by the ruling just made in the case of Minds v. P. R. R. Co., tried before the instant case. The defense here was urged upon the same theory there presented. To present it as it strikes us (although it must be confessed not adequately) we will have recourse again to a few supposititious facts for illustrative purposes: A mine operator complains that the car distribution system of a carrier is unjust and condemned as unlawful by the Interstate Commerce Law; that under a proper regulation he would have received more cars than were supplied to him; that because of the unjust discrimination to which he has been subjected he lost 120,000 tons in tonnage shipment, and that in consequence he suffered a damage of $1 per ton on 70,000 tons of interstate shipments, or $70,000 in all. He submitted this complaint to

the Commission. They find with him on the first branch of his complaint, and find the carrier's system to be unjust and discriminatory. They find with him on the second proposition, and that the just and proper rule of distribution is that for which he contends, and that he was entitled to the number of cars he claims. They find against him in part, however, on the tonnage lost, by finding the total shipments lost were 90,000 tons, of which 30,000 were state and 60,000 interstate, and award him $60,000 damages. The carrier refuses to pay the award, and the complainant brings his action. At the trial the evidence shows the complainant had recovered for 50,000 tons in a state action for intrastate shipments. The carrier, therefore, asks that these 50,000 tons be deducted from the 90,000 total shipments found by the Commission, thereby reducing the interstate shipments to 40,000 tons, and the damages to $40,000. This he asks, notwithstanding it is also shown at the trial that the total shipments were 110,000 (not 90,000) and the interstate 60,000 tons, and the damages $60,000, as found. This is upon the theory, before stated, that the finding of 90,000 tons concludes the complainant, but does not conclude the carrier.

This theory runs through all the points submitted. Our conclusion, already several times stated, is that it is erroneous. A feature of the case which brings the concrete effects of the two theories in sharp contrast is afforded by the D. E. Williams & Co. complaint. The plaintiff had incorporated in its complaint a claim, not only for a reduction in the number of cars to which it was entitled under a proper rating, but also a further claim that Williams & Co., competitors of plaintiff, had been given more cars than the number to which they were justly entitled. The Commission found against the plaintiff on the fact. He sought to introduce evidence at the trial in support of this part of his complaint. The evidence was objected to on the same ground, that the plaintiff was concluded by the finding, and that this part of the claim was no part of the order. It was admitted, and its admission is now asserted to be error. If the action is merely to enforce the order made by the Commission, the logic of the rejection of this claim is irrefutable. If it is an action to recover the damages included in the claim upon which the Commission passed, the evidence is just as clearly admissible. This is the very thought expressed in the quoted phrase from the opinion in Railroad v. Penn, 137 Fed. 343, 70 C. C. A. 23. Everything is included in the order, which was in the complaint submitted to and determined by the Commission.

We do not see that the special statute of limitations written into the act affects the question. Unquestionably the plaintiff would not have this right, unless given to him. All the significance the limitation has is to compel him to resort to it within the named time. P. R. R. v. Clark, supra, is not in point in this respect. All the case rules in this aspect of it is that no action can be maintained in a state court unless the Commission has made an order. This right to sue in a state court is only another advantage given the plaintiff to compensate him for the nonenforcement of payment of the award. This disposes, so far as concerns this court, of 13 of the reasons filed—17, 18, and 23 to 33, both inclusive.

The effect of the judgment recovered in the state court has already in its main aspect been considered. It is embraced in five of the reasons filed—2, 3, 9, 15, and 16. The offer of this evidence and its effect would seem from the oral argument to have a triple aspect. There could by no possibility (meaning by this, legal possibility) have been a recovery in the state court for anything which by a like possibility could be recovered here. What was recovered in the state court is therefore now wholly irrelevant. Again the tonnage of intrastate shipments recovered for in the state courts would have no bearing upon the interstate shipments, unless the plaintiff is precluded by the finding of the Commission of the total tonnage. The evidence was offered, and its effect discussed, and the points submitted embraced only these two aspects. At the oral argument something was said (although abandoned in the written brief) of the proceedings in the state court being evidential of the interstate shipments because, the total shipments being shown, the greater the intrastate shipments, the less the interstate tonnage; and although we are not interested in the former for itself, we are concerned with it as evidence of the latter. The evidentiary basis is that of any self-disserving declaration.

Subscribing to the proposition, we do not feel justified in granting a new trial because of this for three reasons: We think this evidence should have been offered as such, and it is too late to now make the point. Again, all that was offered was the record of the verdict and judgment. This was proof of nothing, except the fact of recovery of the amount. Neither the statement of claim nor any averment of the tonnage was offered. In the third place, the evidence (although formally overruled) was admitted, and the fact sought to be proven was treated as in the case, because it was already in through the findings of the Commission. The evidence was therefore superfluously cumulative.

The measure of damage complaint is embraced in the twenty-second reason.

The charge to the jury was in accord with the rule laid down by the Supreme Court of Pennsylvania. This rule of admeasurement has been said to be open to a question of its correctness. Partly for this reason, but chiefly because there was no necessity to do so, the rule thus laid down was not followed as the rule of measurement to be applied. One way of proving damage would be that suggested by counsel for defendant. Ordinarily damages could be proved in no other way. Here, however, they were proven in another way, to wit, by the award of the Commission. The value of the coal not shipped and subsequently sold by the plaintiff may have been an element in the assessment of the damages, and gone to their reduction. The plaintiff was not bound to show what the proper amount of this reduction was, if the damage could be otherwise proved, and certainly the defendant could not claim the reduction without showing what it was.

The reasons for a new trial which counsel have grouped under the headings IV, V, and VI all go to the amount of the damage. As there was evidence, and sufficient and satisfying evidence, to support

the verdict, we cannot disturb it. It was the jury's place to find the amount of damage, and they have done so.

The final complaint is embraced in the reasons which go to the "delay in payment" item of damage. The charge does not happily express the accepted doctrine on this subject. We cannot find, however, that it took from the jury the power to find the amount of the damage, or misled them as to their duty. The quoted expressions from the opinions in the cited Pennsylvania cases are to be understood in the light of the facts to which they were addressed. There is nothing in the facts of this case to justify us in finding that the jury erred in this feature of their award of damages.

The rule for a new trial is discharged, and plaintiff may enter judgment on the verdict.