**PENNSYLVANIA R. CO. et al. v. TERMINAL WAREHOUSE CO. \***

No. 5586.

Circuit Court of Appeals, Third Circuit.

July 10, 1935.

John Hampton Barnes, Philip Price, Owen J. Wister, and Barnes, Biddle & Myers, all of Philadelphia, Pa., for appellant Pennsylvania R. Co.

M. Hampton Todd, Robert T. Mc-Cracken, and George G. Chandler, all of Philadelphia, Pa., for appellant Merchants Warehouse Co.

Thomas Raeburn White, of Philadelphia, Pa., John J. Hickey, of Washington, D. C., and White, Schnader, Maris & Clapp, of Philadelphia, Pa., for appellee.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

THOMPSON, Circuit Judge.

This is an appeal from a judgment of the District Court for the Eastern District

,Vrit of certiorari granted 56 S. Ct. 137, 80 L. Ed. ——.

of Pennsylvania. The plaintiff is the Terminal Warehouse Company, hereinafter referred to as Terminal, and the defendants are the Pennsylvania Railroad Company, a common carrier, and Merchants Warehouse Company, hereinafter referred to as Pennsylvania Railroad and Merchants, respectively. Terminal brought action at law in the District Court for the Eastern District of Pennsylvania under the Sherman Anti-Trust Act (15 USCA §§ 1, 2) and the Clayton Act (15 USCA § 15).

The pertinent sections of the Sherman Act provide:

"Section 1. Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any such contract or engage in any such combination or conspiracy, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by fine not exceeding $5,000, or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court.

"§ 2. Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by fine not exceeding $5,000, or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court."

The pertinent section of the Clayton Act provides: "§ 15. Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

Terminal alleged that it had been damaged by reason of an unlawful combination and conspiracy between Pennsylvania Railroad and Merchants, whereby Terminal was prevented from obtaining its fair, just, and normal share of the warehousing business in Philadelphia, and whereby its profits from the business which it did obtain were diminished. It claimed treble damages and costs, including a reasonable attorney's fee. The questions of law raised in the affidavit of defense were resolved against the defendants, and the case was thereupon tried upon the merits to a judge and jury. The jury returned a verdict in favor of Terminal in the amount of $136,125. On motion, the District Court trebled the amount, directing the entry of judgment in favor of Terminal in the amount of $410,338.81, and allowed a counsel fee of $27,000 to be taxed as part of the costs.

The statement of claim contained allegations that Terminal and Merchants were each engaged in the general warehousing business; that they received, handled, stored, and forwarded goods in interstate commerce; that they were competitors for the Philadelphia warehousing business; that they solicited business outside of Pennsylvania; that Pennsylvania Railroad owned a considerable block of stock of Merchants from which it received substantial dividends; that Pennsylvania Railroad and Merchants combined and conspired to destroy Terminal's business so as to acquire a monopoly of Philadelphia's warehousing business for Merchants and the complementary transportation business for Pennsylvania Railroad; that in accordance with a series of written contracts extending over thirty years, Pennsylvania Railroad made payments to Merchants, and Merchants gave preferences to Pennsylvania Railroad until the payments were declared unlawful. Terminal's original claim for damages was based on loss of anticipated profits on business of which it alleged it was unlawfully deprived, and loss because of diminished profits on business actually transacted by it. Its final claim, however, was restricted to loss because of diminished profits.

The defendants maintain that the action is barred by a prior proceeding involving the same parties before the Interstate Commerce Commission. In 1928, Terminal and two others engaged in the warehousing business in Philadelphia filed a complaint with the Interstate Commerce Commission in which it was alleged that Pennsylvania Railroad was violating the Interstate Commerce Act (49 USCA § 1 et seq.) by paying Merchants rebates on freight charges. Merchants voluntarily became a party to that proceeding, thus enabling the complainants, including Terminal, to press their claim against the fa-

vored shipper as well as against the carrier. The complainants prayed for a cease and desist order which the Commission allowed. This order was sustained by a statutory three-judge court in Merchants' Warehouse Co. v. United States (D. C.) 44 F.(2d) 379, and affirmed by the Supreme Court in 283 U. S. 501, 51 S. Ct. 505, 75 L. Ed. 1227. The complaint also contained a prayer that Pennsylvania Railroad be required to pay an award of damages to each of the complainants by way of reparation. The Commission denied reparation. It said: "Complainants confine the basis of their claim for reparation to damages resulting from shrinkage or diminution of their normal business profits. They urge that they be permitted to submit proof of actual pecuniary loss at a further hearing to be held subsequent to the decision herein, contending that it would be impracticable to make such proof prior to the date the unjust discrimination and undue prejudice is removed. We are not inclined to this view. Complainants have been accorded ample opportunity to present facts supporting an award of reparation. Their case must stand or fall on the facts now of record. The evidence is far too vague and indefinite to warrant the conclusion that complainants have suffered actual pecuniary loss attributable directly to the alleged unlawful practices. Damage must be shown with certainty to support an award of reparation under findings of unjust discrimination or undue prejudice. Pennsylvania R. Co. v. International Coal Co., 230 U. S. 184, 206, 33 S. Ct. 893, 57 L. Ed. 1446, Ann. Cas. 1915A, 315. Reparation is denied."

Terminal took no appeal from the order denying reparation.

In the action before the Commission, the complainants produced documentary evidence that the subsidized warehouse companies cut or shrunk normal warehouse charges by affording free distribution of warehouse freight. They also produced testimony that the rebates, which took the form of allowances, enabled the subsidized warehouse companies to give free service; that the rebates were used to the detriment of the complainants; and that the combination fixed the market value of the warehouse service in Philadelphia. In the action before the District Court, Terminal produced testimony that Merchants made no charge for goods handled during the 48-hour free period and collected no demurrage for car detention, whereas Terminal had to pay for car detention as well as for construction and maintenance of side tracks to its warehouses; that Terminal had to charge its costs for handling inbound and outbound freight, and could not compete with Merchants' offer of free service because it received no railroad allowance; that, as a result, Terminal could not handle heavy density products and had to reduce its rates on light density products; and that reduced charges, made necessary by the alleged unfair competition, were less by $536,278.35 than the normal rate would have netted Terminal.

We conclude that the testimony upon which Terminal relied to prove damages in the District Court was substantially identical with that upon which it relied to prove damages before the Commission.

If the Commission had jurisdiction to award damages and if the claim before the Commission amounted to an election of remedies, the questions of law raised in the affidavit of defense should have been resolved in favor of Pennsylvania Railroad and Merchants.

The Interstate Commerce Commission had jurisdiction to award damages as reparation for actual loss sustained by reason of an unlawful preference. On this point we need but quote from the opinion in Interstate Commerce Commission v. United States, 289 U. S. 385, 388, 53 S. Ct. 607, 609, 77 L. Ed. 1273, where the Supreme Court said: "The Interstate Commerce Act makes it unlawful for a carrier to give any undue or unreasonable preference to a person or locality, or to subject any person or locality to an undue disadvantage (24 Stat. 380, § 3, and 41 Stat. 479, § 405, 49 U. S. C., § 3 [49 USCA § 3]), and charges the offender with liability for the full amount of damages resulting from the unlawful act. Section 8 (49 USCA § 8). Upon the hearing of a complaint, the Commission is empowered to ascertain the damages and award them. Section 16 (1), 49 USCA § 16 (1)."

The phrase "full amount of damages," referred to in the above opinion, is sufficiently broad in scope to include damages for injury to one's business, including shrinkage of normal business profits. Interstate Commerce Commission v. United States, supra; Keogh v. C. & N. W. Ry. Co., 260 U. S. 156, 43 S. Ct. 47, 67 L. Ed. 183; Pennsylvania R. Co. v. Weber, 257 U. S. 85, 42 S. Ct. 18, 66 L. Ed. 141;

594

Pennsylvania R. Co. v. Minds, 250 U. S. 368, 39 S. Ct. 531, 63 L. Ed. 1039; Louisville & N. R. Co. v. Ohio Valley Tie Co., 242 U. S. 288, 37 S. Ct. 120, 61 L. Ed. 205; Pennsylvania R. Co. v. W. F. Jacoby & Co., 242 U. S. 89, 37 S. Ct. 49, 61 L. Ed. 165; Pennsylvania R. Co. v. International Coal Co., 230 U. S. 184, 33 S. Ct. 893, 57 L. Ed. 1446, Ann. Cas. 1915A, 315.

 Several statutory remedies were available to Terminal. It could have petitioned the Interstate Commerce Commission for an order directing the offending common carrier to cease and desist from the unlawful practices and for an award of damages; or it could have sued in the appropriate District Court for an award of damages or treble damages. It did not have the right, however, to pursue each of the above remedies successively until such time as it found a tribunal which would award the damages sought. As we have already stated, Terminal did in fact petition the Interstate Commerce Commission for a cease and desist order, which was granted, and for an award of damages, which was denied. Terminal thereby elected its remedy, and is barred from subsequent action for the same damages. We deem the following language of the Supreme Court in Interstate Commerce Commission v. United States, 289 U. S. 385, 388, 53 S. Ct. 607, 609, 77 L. Ed. 1273, to be pertinent to the facts in the instant case, and determinative of the issue of election of remedies: "The respondent by its complaint to the Commission invoked this dual jurisdiction, the administrative jurisdiction to prescribe a rule for the future (Great Northern Railway Co. v. Merchants' Elevator Co., 259 U. S. 285, 291, 42 S. Ct. 477, 66 L. Ed. 943; Baltimore & Ohio R. Co. v. Brady, 288 U. S. 448, 53 S. Ct. 441, 77 L. Ed. 888), and the judicial or quasi-judicial jurisdiction to give reparation for the past. Baltimore & Ohio R. Co. v. Brady, supra. In dismissing such a complaint, the Commission speaks with finality. Its orders purely negative—negative in form and substance —are not subject to review by this court or any other. Standard Oil Co. v. United States, 283 U. S. 235, 51 S. Ct. 429, 75 L. Ed. 999; Alton R. Co. v. United States, 287 U. S. 229, 53 S. Ct. 124, 77 L. Ed. 275; Procter & Gamble Co. v. United States, 225 U. S. 282, 32 S. Ct. 761, 56 L. Ed. 1091; Baltimore & O. R. Co. v. Brady, supra. Damages for discrimination denied by the Commission are not recoverable somewhere else."

Upon the same point, see Baltimore & Ohio R. Co. v. Brady, 288 U. S. 448, 53 S. Ct. 441, 77 L. Ed. 888; Standard Oil Co. v. United States, 283 U. S. 235, 51 S. Ct. 429, 75 L. Ed. 999; Pennsylvania R. Co. v. Clark Coal Co., 238 U. S. 456, 35 S. Ct. 896, 59 L. Ed. 1406; Hillsdale Coal & Coke Co. v. Pennsylvania R. Co. (D. C.) 237 F. 272.

We conclude that the present action is barred by the prior proceedings before the Interstate Commerce Commission.

Judgment reversed.